UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARLENE PRUDHEL, RANDALL S.
PRUDHEL, BRADLEY K. PRUDHEL,
RYAN K. PRUDHEL, and
SHAYNE R. PRUDHEL,

                         NO. CIV. S-09-0661 LKK/KJM

       Plaintiffs,

    v.

                          O R D E R

ENDOLOGIX, INC., and
DOES 1 through 50, inclusive,

       Defendants.

_____/

    Plaintiffs bring various state-law claims arguing that a medical device designed and manufactured by defendant caused the death of Edwin Prudhel.  Defendants move to dismiss on the ground that plaintiffs' claims are expressly preempted by federal law.

## I. BACKGROUND

    Decedent underwent an aortic stent graft repair.  First Amended Complaint ("FAC") ¶¶ 19, 20.  During this procedure, the treating physician attempted to use a Powerlink stent.  FAC ¶ 21.

1

1  The operation was unsuccessful, and decedent suffered fatal
2  injuries, which plaintiffs attribute to malfunction of the stent.
3  FAC ¶¶ 9, 24-25.  The Powerlink stent is designed, manufactured,
4  and sold by defendant Endologix.  FAC ¶¶ 7, 12-13, 26.  Defendant's
5  argument for dismissal turns on the Food and Drug Administration's
6  ("FDA") regulation of medical devices.  The court reviews this
7  regulatory framework before returning to plaintiffs' particular
8  claims.

9  **A.   Federal Regulation of Medical Devices**

10      The Food, Drug, and Cosmetic Act, 52 Stat. 1040, as amended,
11  21 U.S.C. § 301 <u>et seq.</u>, requires FDA approval prior to the
12  introduction of new drugs into the market.  <u>See</u> <u>Riegel v.</u>
13  <u>Medtronic, Inc.</u>, ___ U.S. ___, 128 S.Ct. 999, 1002 (2008).  In
14  1976, Congress passed the Medical Device Amendments to this Act,
15  21 U.S.C. § 360c <u>et seq.</u> ("MDA").  The MDA broadened the Act to
16  include medical devices.  These devices are divided into three
17  levels of regulation, Class III of which is relevant here.  21
18  U.S.C. § 360c(a)(1).[1]

19      Class III devices are subject to a premarket approval process
20  which the Supreme Court has described as "rigorous."  <u>Medtronic,</u>
21  <u>Inc. v. Lohr</u>, 518 U.S. 470, 477 (1996).  "[T]he manufacturer must
22  provide the FDA with a 'reasonable assurance' that the device is
23  both safe and effective."  <u>Id.</u> (quoting 21 U.S.C. § 360e(d)(2)).
24  An applicant must submit, inter alia,

25  _____

26      [1] Unqualified § 360 <u>et seq.</u> numbers hereinafter refer to
    sections of 21 U.S.C.

2

> full reports of all studies and investigations
> of the device's safety and effectiveness that
> have been published or should reasonably be
> known to the applicant; a "full statement" of
> the device's "components, ingredients, and
> properties and of the principle or principles
> of operation"; "a full description of the
> methods used in, and the facilities and
> controls used for, the manufacture,
> processing, and, when relevant, packing and
> installation of, such device"; samples or
> device components required by the FDA; and a
> specimen of the proposed labeling.

Riegel, 128 S.Ct. at 1004 (quoting 21 U.S.C. § 360e(c)(1)).  In determining whether this evidence demonstrates that approval is warranted, the FDA "weigh[s] any probable benefit to health from the use of the device against any probable risk of injury or illness from such use." § 360c(a)(2)(C).  Thus, a device that presents great risks may be approved if it also provides great benefits.  Riegel, 128 S.Ct. at 1004.  After completing review, the FDA may grant or deny approval outright, or it may grant an approval conditioned on adherence to various requirements.  See 21 U.S.C. §§ 360e(d), 360j(e)(1).  The FDA may also deny approval but send a letter to the applicant indicating what changes or conditions could render the device approvable.  21 C.F.R. §§ 814.44(e), (f).

The MDA imposes further requirements after devices have been approved.  After approval, "the MDA forbids the manufacturer to make, without FDA permission, changes in design specifications, manufacturing processes, labeling, or any other attribute, that would affect safety or effectiveness." Riegel, 128 S. Ct. at 1005 (citing § 360e(d)(6)(A)(i)).  Approved devices are also subject to

3

1  ongoing reporting requirements related to the device's health and
2  safety.  § 360i.

3  **B.   Factual Background and Plaintiffs' Claims**

4       Defendant received premarket approval for the Powerlink stent
5  in October 2004.  A Powerlink stent was used in an operation on
6  decedent on April 3, 2008.  FAC ¶¶ 19-20.  During the procedure,
7  the tip and/or cap of the stent's delivery device (a component
8  included in the premarket approval) allegedly "disengaged," a
9  malfunction.  FAC ¶ 24.  This malfunction allegedly caused
10 decedent's injuries.  FAC ¶ 25.

11      Plaintiffs attribute this malfunction to manufacturing and/or
12 design defects.  As to manufacturing, the stent's manufacture
13 allegedly violated the FDA's manufacturing requirements imposed by
14 the premarket approval and 21 C.F.R. § 820, resulting in "an
15 impurity, imperfection, and/or other product defect" in the stent
16 and components.  FAC ¶¶ 50, 52, 55.  As to design, plaintiffs
17 allege that the stent suffered design defects rendering it
18 "unreasonably dangerous," FAC ¶ 65, and that it was neither as safe
19 nor as adequately tested as defendant represented to the FDA.  FAC
20 ¶ 67.  Plaintiffs generally allege that defendant violated numerous
21 federal regulations, including medical device reporting procedures,
22 21 C.F.R. § 803k, failure analysis and quality assurance
23 procedures, § 820, recall and notification procedures, § 806, and
24 provision of instructions for use, § 814. FAC ¶¶ 45-47, 49.

25      Plaintiffs' general allegations also claim that defendant had
26 previously recalled several batches of Powerlink stents.  FAC ¶¶

4

27-30.  Some batches were recalled because "the tip may separate from the catheter sheath inner core during insertion of the graft," causing the delivery catheters to be recalled.  FAC ¶ 27.  Other batches were recalled because of separation problems with the delivery catheter which prevented deployment of the graft.  FAC ¶ 29.[2]  Plaintiffs contend that defendant should have expanded the scope of the recalls, FAC ¶ 30, although plaintiffs do not allege that the particular stent used on decedent was subject to the above recalls, nor do plaintiffs specifically allege that the stent used should have been recalled.  Although plaintiffs do not specifically connect these recall allegations to any claim for relief, these allegations provide some indication of the type of defects alleged to exist.  Under the court's obligation to give the pleader the benefit of all reasonable inferences (see §II, infra), it is not unreasonable to infer that plaintiffs' claims are based on these alleged faults.

Based on the above, plaintiffs enumerate four causes of action: a strict liability claim for a manufacturing defect, a strict liability claim for a design defect, negligence, and breach of both express and implied warranty.  Defendant moves to dismiss all claims as explicitly preempted by the MDA.

**II. STANDARD FOR A FED. R. CIV. P. 12(B)(6) MOTION TO DISMISS**

In order to survive a motion to dismiss for failure to state

---

[2] Specifically, plaintiffs allege that "The stated reason for [the second] recalls was that the front sheath of the delivery catheter separation, [sic] preventing deployment of the stent graft."  FAC ¶ 29.

a claim, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 569 (2007).  While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level." Id. at 555.

The Supreme Court recently held that Federal Rule of Civil Procedure 8(a)(2) requires a "showing" that the plaintiff is entitled to relief, "rather than a blanket assertion" of entitlement to relief. Id. at 555 n.3.  Though such assertions may provide a defendant with the requisite "fair notice" of the nature of a plaintiff's claim, the Court opined that only factual allegations can clarify the "grounds" on which that claim rests. Id.  "The pleading must contain something more. . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id. at 555, quoting 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1216, pp. 235-36 (3d ed. 2004).[3]

On a motion to dismiss, the allegations of the complaint must be accepted as true. See Cruz v. Beto, 405 U.S. 319, 322 (1972). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded"

---

[3] The holding in Twombly explicitly abrogates the well established holding in Conley v. Gibson that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957); Twombly, 550 U.S. at 560.

1   allegations of the complaint.  See Retail Clerks Int'l Ass'n v.

2   Schermerhorn, 373 U.S. 746, 753 n.6 (1963).   In general, the

3   complaint is construed favorably to the pleader.  See Scheuer v.

4   Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by

5   Harlow v. Fitzgerald, 457 U.S. 800 (1982).  Nevertheless, the court

6   does not accept as true unreasonable inferences or conclusory legal

7   allegations cast in the form of factual allegations.  W. Mining

8   Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

## III. ANALYSIS

**A.   The MDA's Preemption of State Law**

11      Defendant moves to dismiss all of plaintiffs' claims on the

12   ground that these claims are preempted by the MDA.   The MDA

13   explicitly preempts any state requirement "'which is different

14   from, or in addition to, any requirement applicable . . . to the

15   device' under federal law."  Riegel, 128 S.Ct. at 1006 (quoting 21

16   U.S.C. § 360k(a)(1)).  Thus, for state law to be preempted, federal

17   law must impose requirements on a device, and state law must impose

18   additional requirements.  The first step of this analysis is not

19   disputed here.   Although federal requirements only trigger

20   preemption when there is a requirement specific to a particular

21   device, premarket approval of the Powerlink under the MDA is such

22   a specific requirement.  Id. (citing Lohr, 518 U.S. at 495), id.

23   at 1007.   State law is therefore preempted insofar as it imposes

24   requirements on the Powerlink that exceed those imposed by the FDA.

25   Id. at 1007.

26      In Riegel and Lohr, the Supreme Court concluded that state

1   common law duties impose "requirements" within the meaning of the
2   MDA's preemption clause.  Riegel, 128 S.Ct. at 1008; Lohr, 518 U.S.
3   at 512 (opinion of O'Connor, J., joined by Rehnquist, C.J., and
4   Scalia and Thomas, JJ.), 503-05 (opinion of Breyer, J.).[4]  "State
5   tort law that requires a manufacturer's catheters to be safer, but
6   hence less effective, than the model the FDA has approved disrupts
7   the federal scheme no less than state regulatory law to the same
8   effect."  Riegel, 128 S.Ct. at 1008.  In particular, the court
9   noted that juries applying state common law may focus on the risks
10  demonstrated by a single case rather than the benefits realized by
11  the device's other users.  Id.

12      However, state common law duties are not preempted entirely.
13  Instead, "§ 360k does not prevent a State from providing a damages
14  remedy for claims premised on a violation of FDA regulations; the
15  state duties in such a case 'parallel,' rather than add to, federal
16  requirements."  Id. at 1011.  Other than to hold generally that
17  parallel claims were permitted, Riegel did not discuss parallel
18  claims.

19      The present case raises at least three questions regarding
20  Riegel and the MDA's preemption provision.  These are whether the
21  MDA's preemption provision applies to all claims, what types of
22  claims are parallel, and what a plaintiff must allege to
23  successfully plead a parallel claim.

24  _____

25      [4] Lohr was, prior to Riegel, the primary Supreme Court opinion
    interpreting the MDA's preemption provision.  Lohr produced a
    divided opinion, in which Justice Breyer's concurring opinion is
26  controlling.

1    No decision of the Ninth Circuit directly speaks to any of
2  these three questions.  Nor has any other Circuit addressed these
3  issues since <u>Riegel</u> was decided.  Accordingly, this court must
4  independently analyze the issues, but in doing so, can draw on the
5  decisions of other district courts.[5]

6  **B.    Scope of the MDA's Preemption Provision, 21 U.S.C. § 360k**

7    Plaintiffs first argue that under <u>Riegel</u>, the MDA's preemption
8  clause, § 360k, does not apply to claims for breach of express
9  warranty--i.e., that a claim for breach of express warranty may
10 proceed regardless of whether it parallels federal requirements.[6]
11 The FAC alleges that defendant "provided express warranties that
12 the Powerlink was safe for intended and foreseeable use," and that
13 defendant made "representations . . . on the product label, in
14 other promotional and sales materials and otherwise."  FAC ¶¶ 87,
15 68.  Plaintiffs have not otherwise alleged the content or details
16 of these representations. Defendant has not responded to, or even
17 acknowledged, plaintiffs' argument that the express warranty claim
18 is not subject to preemption under the MDA.  Although defendants'
19 silence may constitute an admission, the court nonetheless examines

20 ────────────

21    [5] Curiously, as far as this court can determine, no district
   court within this Circuit has directly addressed the problem.
22

23    [6] Plaintiffs also argue that <u>Riegel</u> does not apply to claims
   for manufacturing defects.  Plaintiffs misinterpret the authorities
24 upon which they rely.  The cases have held, as <u>Riegel</u> obviously
   requires, that manufacturing defects claims are preempted to the
25 extent that they impose additional state law requirements, but that
   such claims may be the type that permissibly enforces parallel
26 duties.  The question of whether plaintiffs' manufacturing defect
   claim is parallel is discussed in the following section.

1  the issue.

2      The MDA preempts requirements imposed by states that exceed

3  federal requirements.  21 U.S.C. § 360k.  The Supreme Court has

4  observed that in general, state law claims for breach of express

5  warranty sound in contract, rather than tort.  Cipollone v. Liggett

6  Group, Inc., 505 U.S. 504, 526 (1992) (Stevens, J., for the

7  plurality).   While  tort  duties  are  imposed  by  the  state,

8  contractual obligations are voluntarily assumed by the parties, and

9  such obligations may therefore fall outside preemption clauses.

10  For example, the Supreme Court has held that a breach of express

11  warranty  claim  is  not  preempted  by  the  Federal  Insecticide,

12  Fungicide, and Rodenticide Act's preemption of state imposition of

13  different or additional labeling packaging requirements.  Bates v.

14  Dow Agrosciences L.L.C., 544 U.S. 431, 444-45 (2005) (discussing

15  7 U.S.C. § 136v(b)).  The court explained that

16              a cause of action on an express warranty asks
            only that a manufacturer make good on the
17              contractual  commitment  that  it  voluntarily
            undertook by placing that warranty on its
18              product.   Because this common-law rule does
            not  require  the  manufacturer  to  make  an
19              express  warranty,  or  in  the  event  that  the
            manufacturer elects to do so, to say anything
20              in particular in that warranty, the rule does
            not  impose  a  requirement  for  labeling  or
21              packaging.

22  Id. (internal quotation omitted); see also Cipollone, 505 U.S. at

23  525-26 (express warranty claim similarly not preempted by the

24  Public  Health  Cigarette  Smoking  Act).   California's  breach  of

25  express  warranty  law  follows  this  general  pattern,  in  that  a

26  California  claim  for  breach  of  express  warranty  is  based  on  a

1 violation of a voluntary representation made by defendant.  See

2 Krieger v. Nick Alexander Imports, Inc., 234 Cal. App. 3d 205, 212

3 (1991) (citing Cal. Uniform Comm. Code § 2313 and Cal. Civ. Code

4 § 1791.2).

5      Following Cipollone, several courts have held that a claim for

6 breach of express warranty lies outside the scope of the MDA's

7 preemption clause.  The case most often cited for this proposition

8 is Mitchell v. Collagen Corp., 126 F.3d 902, 915 (7th Cir. 1997).

9 In Mitchell, the Seventh Circuit held that because a claim for

10 breach of express warranty is contractual, it "does not necessarily

11 interfere with the operation of the [pre-market approval], and

12 therefore we cannot say that such a cause of action is preempted."

13 Id. at 915.[7]

14      Other courts have held that the MDA preemption analysis turns

15 on whether the language purportedly giving rise to an express

16 warranty was compelled by the FDA, approved by the FDA, or

17 extraneous to FDA approval.  The FDA may require product labels to

18 contain certain information.  Other representations on product

19 labels must by approved by the FDA.  In approving labels, the FDA

20 determines that the labels are neither false nor misleading.  §

21 360e(d)(1)(A).  The parties have not identified any FDA involvement

22

23      [7] In the initial district court opinion in Riegel, the
24 district court followed Mitchell to conclude that an express
   warranty claim was not preempted by the MDA.  Riegel v. Medtronic,
25 Inc., 2002 WL 34234093, *9 (N.D.N.Y. 2002).  This claim was
   otherwise resolved before the case was heard by the Supreme Court,
26 and neither the Second Circuit nor the Supreme Court addressed this
   claim on appeal.

1   in other (i.e., non-label) communications regarding medical
2   devices.

3       Mitchell did not address this point, instead granting summary
4   judgment to defendant on the ground that plaintiff had not
5   identified any evidence that an express warranty had been
6   communicated.   Id.   Among courts looking at particular
7   communications, the Fifth Circuit has taken the most restrictive
8   approach, concluding that express warranty claims are preempted
9   whenever they are based on language approved by the FDA. Gomez v.
10  St. Jude Med. Daig Div., Inc., 442 F.3d 919, 932 (5th Cir. 2006);
11  accord Parker v. Stryker Corp., 584 F. Supp. 2d 1298, 1303 (D.
12  Colo. 2008), Horowitz v. Stryker Corp., 2009 WL 436406 (E.D.N.Y.
13  2009); see also Carter, 582 F. Supp. 2d at 1286 (interpreting a
14  similar preemption provision relating to drugs, rather than
15  devices, in this way). Gomez explained that to succeed on a breach
16  of express warranty claim under Louisiana law, the expressed
17  warranty must be "untrue."   Gomez, 442 F.3d at 932 (quoting La.
18  Rev. Stat. Ann. § 9:2800.58).   In approving language, the FDA
19  determines that it is neither false nor misleading.   §
20  360e(d)(1)(A).  In Gomez, the court held that a breach of express
21  warranty claim would therefore impose a requirement that was
22  "potentially inconsistent with" the federal requirements.   Id.

23      Preemption was interpreted more narrowly by the First Circuit,
24  which held that "manufacturers will not be held liable [in breach
25  of express warranty claims] for packaging and labeling *imposed* by
26  the FDA."   King v. Collagen Corp., 983 F.2d 1130, 1135 (1st Cir.

12

1  1993) (emphasis added).

2      Most permissively, the Third Circuit has held that no express

3  warranty claims are preempted.  Michael v. Shiley, Inc., 46 F.3d

4  1316, 1328 (3d Cir. 1995) overruled on other grounds as stated in

5  In re Orthopedic Bone Screw Products Liability Litigation, 159 F.3d

6  817, 825 (3rd Cir. 1998); accord Hofts v. Howmedica Osteonics

7  Corp., 597 F. Supp. 2d 830, 839 (S.D. Ind. 2009).  This court is

8  not aware of any decision addressing whether a breach of express

9  warranty claim based on language not approved by the FDA was

10  preempted.

11      Although the above cases provide a useful background for

12  medical device express warranty claims, this court need not decide

13  among them, because plaintiffs' claim suffers a separate problem.

14  Plaintiffs allege that defendant "provided express warranties that

15  the Powerlink was safe for intended and foreseeable use."  To

16  succeed on this particular breach of express warranty claim,

17  plaintiffs will need to show that the product was unsafe.  As noted

18  by the Supreme Court in Riegel, "safe" has different meanings under

19  the MDA and state law.  Plaintiffs do not tie their express

20  warranty claim to an allegation that the product was unsafe within

21  the meaning of the MDA.  Nor do plaintiffs allege that defendant

22  somehow voluntarily sought to implicate the definition of "safe"

23  used by California law.  To the extent that defendant represented

24  that the product was safe within the meaning of the MDA, but that

25  plaintiffs seek to impose liability on the ground that the product

26  is unsafe within the meaning of California law, plaintiffs' claim

13

is preempted, for the reasons discussed in the following section. To the extent that plaintiffs intended to allege a different basis for their claim, plaintiffs have failed to put defendant or this court on notice of that basis. Heisner ex rel. Heisner v. Genzyme Corp., 2008 WL 2940811, *6 (N.D. Ill. 2008) (dismissing a claim that was either preempted or, if construed alternatively, insufficiently pled under Twombly).

C.   **What Constitutes a Parallel Claim**

District courts have divided on what constitutes a "parallel claim" under Riegel.

The first question is what the state requirements must be parallel to. Courts have generally held that state law claims are not preempted if they parallel either specific or general FDA regulations, notwithstanding the fact that only a specific requirement will trigger the MDA's preemption clause. See, e.g., Hofts v. Howmedica Osteonics Corp., 597 F. Supp. 2d 830, 835 (S.D. Ind. 2009), In re Medtronic, Inc. Sprint Fidelis Leads Products Liability Litigation, 592 F. Supp. 2d 1147, 1157-58 (D. Minn. 2009). The court follows this approach here.

The second question is what it means to parallel a federal requirement. The most restrictive approach was taken by the Northern District of Illinois in Bausch v. Stryker Corp, 2008 WL 5157940 (N.D. Ill. Dec. 9, 2008). In essence, the court held that a claim is "parallel" to a federal requirement only when it provides a cause of action for violation of the federal requirement. A strict liability claim was preempted because under

14

1  Illinois law, such a claim "would, by necessity, require a trier

2  of fact to assess whether a product is unreasonably dangerous," and

3  the court held that a violation of federal regulations would be

4  collateral to, and not the predicate of, a finding of strict

5  liability.  Id. *4.  The court also held that negligence claims

6  were preempted.  "The preemption clause in the MDA bars all claims

7  'different from, or in addition to' federal regulations." Id. at

8  *5 (quoting § 360k).  "[A]lthough [plaintiff] has alleged that

9  Defendants violated the FDA, [plaintiff]'s negligence claim is not

10 based on a duty that is 'substantially identical' to the duty that

11 is imposed on the [device] by FDA regulations." Id. at *6 (quoting

12 Lohr, 518 U.S. at 496-97).  Thus, negligence claims were preempted

13 even though "plaintiff alleges that the same conduct that violated

14 the FDA also" constituted the negligence. Id. at *5. Bausch would

15 therefore apparently hold that the state law claims at issue in

16 this case are preempted, because each requires proof of elements

17 other than mere violations of the federal requirements.

18     This court declines to follow Bausch, because notwithstanding

19 the Supreme Court's use of the phrase "substantially identical" in

20 Lohr, Bausch cannot be squared with Lohr.  In Lohr, the majority

21 of the court held that a state law strict liability claim was not

22 preempted despite the fact that to recover on the claim, the

23 plaintiff would need to show more than merely a violation of

24 federal requirements.  Lohr, 518 U.S. at 495 (plurality opinion of

25 JJ. Stevens, Kennedy, Souter and Ginsburg) (quoting § 360k), id.

26 at 508 (concurring opinion of J. Breyer, joining this portion of

1  the majority opinion).   Even though the state law of strict
2  liability might impose a "narrower requirement . . . 'different
3  from' the federal rules in a literal sense," a rule that
4  contracted, rather than expanded, liability did not conflict with
5  the federal rules. Id. at 495.

6      Most courts interpreting Riegel have continued to adopt this
7  view of Lohr.  For example, the Southern District of Indiana held
8  that the MDA only preempts "claims that the device at issue
9  'violated state tort law notwithstanding compliance with the
10 relevant federal requirements.'"   Hofts v. Howmedica Osteonics
11 Corp., 597 F. Supp. 2d 830, 835 (S.D. Ind. 2009) (quoting Riegel,
12 128 S.Ct. at 1011).   Hofts held that "'claims [are] premised on a
13 violation of FDA regulations,'" and therefore permissible under
14 Riegel, whenever they are based on a violation of federal
15 regulations regardless of whether the claim incorporates additional
16 elements.   Id. at 835 (quoting Riegel, 128 S.Ct. at 1011).   The
17 court therefore found no preemption of a strict liability claim
18 alleging that "deviation from the FDA's manufacturing requirements
19 was unreasonably dangerous" or of a negligence claim alleging that
20 defendant "breached the duty of care . . . by failing to adhere to
21 the FDA's manufacturing requirements." Id. at 836-37.   See also
22 In re Medtronic, Inc. Sprint Fidelis Leads Products Liability
23 Litigation, 592 F. Supp. 2d 1147, 1157-58 (D. Minn. 2009) (holding
24 that the MDA did not preempt various manufacturing defect tort
25 claims premised on violations of federal requirements, but that
26 plaintiffs' allegations failed to satisfy Twombly), Parker v.

16

1  Stryker Corp., 584 F. Supp. 2d 1298, 1302 (D. Colo. 2008) (same);

2  Horowitz v. Stryker Corp., 2009 WL 436406, *6 (E.D.N.Y., Feb. 20,

3  2009), Purcel v. Advanced Bionics Corp., 2008 WL 3874713 *3 (N.D.

4  Tex. Aug 3, 2008).

5       This court concludes that Hofts articulates the better view.

6  State law claims are preempted to the extent that they impose

7  additional requirements on device manufacturers.  Thus, compliance

8  with  federal  requirements  must  preclude  state  law  liability.

9  However,  a  state  law  claim  that  requires  more  than  mere

10 noncompliance  with  federal  requirements--for  example,  that  the

11 violation  of  federal  requirements  have  been  reckless  or

12 unreasonable--is not precluded, notwithstanding the fact that such

13 a claim uses a standard that is literally "different from" the

14 federal  requirements.   Lohr, 518 U.S. at 495.   Such a state law

15 claim does not impose conflicting requirements on manufacturers and

16 thereby disrupt the federal regulatory scheme.

17      Applying  this  standard  to  this  case,  plaintiffs  have

18 adequately alleged a parallel claim in their first claim, but not

19 in their second, third, and fourth claims.  Plaintiffs' first claim

20 is for strict liability arising out of a manufacturing defect.  The

21 manufacturing defect claim alleges that the manufacturing was not

22 in compliance with the requirements imposed by 21 C.F.R. § 820,

23 resulting in a defect.  FAC ¶ 55.  This alleged defect concerned

24 separation  of  the  components  of  the  delivery  device.  Plaintiffs

25 allege that the tip or cap of the stent's delivery device became

26 disengaged  during  insertion  into  decedent.    ¶ 24.    Plaintiffs

17

1   further allege that prior manufacturing lots of the stents had been
2   recalled because "the tip may separate from the catheter sheath
3   inner core during insertion of the graft."   ¶ 27.   These
4   allegations undoubtedly suffice to state a parallel claim under
5   Riegel.

6         Plaintiffs' second claim, for strict liability for a design
7   defect claim, is also apparently based on the separation and
8   associated malfunction of the delivery device.  Fed. R. Civ. P. 8.
9   However, the only alleged connection between this claim and a
10  federal violation is that the stent "was not safe for its intended
11  use as [defendant] represented to the FDA it would be" and "was
12  inadequately tested as [defendant] represented to the FDA it would
13  be tested."   FAC ¶ 67.   These allegations do not establish a
14  federal violation.   It is unclear whether plaintiffs allege that
15  defendant misrepresented this information to the FDA, or whether
16  defendant's representations to the FDA instead merely later proved
17  to be untrue.   While the former might be a federal violation, it
18  would implicate the FRCP 9 pleading requirements, which clearly are
19  not met here.   The latter, however, does not appear to amount to
20  a federal violation.  Accordingly, plaintiffs have not alleged how
21  this claim is predicated on a federal violation, and this claim is
22  therefore dismissed.

23        Plaintiffs' third claim, for negligence, and fourth claim, for
24  breach of warranty, contain no allegations that in any way
25  demonstrate that these claims are predicated upon violations of
26  federal requirements.  Although plaintiffs' generally allege that

1 many violations of federal requirements occur, to state a parallel

2 claim, a federal violation must be a predicate to the theory of

3 liability.  Accordingly, these claims are dismissed: either they

4 are not parallel, in which case they are preempted by the MDA, or

5 they are inadequately pled, in that they fail to put the defendant

6 on notice of the violation of federal requirements that serves as

7 the basis for the claim.

8 **D.   Pleading Requirements for Parallel Claims**

9     Courts are further divided as to what <u>Twombly</u> requires of a

10 plaintiff seeking to plead a parallel claim.  The most liberal view

11 was taken by the Southern District of Indiana in <u>Hofts</u>, 597 F.

12 Supp. 2d 830.  The plaintiff in <u>Hofts</u> brought negligence and strict

13 liability claims for manufacturing defects.  <u>Id.</u> at 836.  The

14 plaintiff predicated these claims on violations of the premarket

15 authorization and FDA manufacturing regulations.  <u>Id.</u>  However, the

16 plaintiff did not allege precisely what conduct violated these

17 federal requirements, or what the manufacturing defect was.

18 Nonetheless, the court held to require such specific allegations

19 would impose a heightened pleading requirement and exceed the

20 requirements of <u>Twombly</u>.  <u>Id.</u> at 838.

21     Most courts have instead held that a plaintiff must allege the

22 particular federal requirement that was violated, and how.  In <u>In</u>

23 <u>re Medtronic, Inc. Sprint Fidelis Leads Products Liability</u>

24 <u>Litigation</u>, 592 F. Supp. 2d 1147, 1158 (D. Minn. 2009), the court

25 held that while an allegation that a product "was defective because

26 the manufacturing processes for the device . . . did not satisfy

19

1  the Food and Drug Administration's Pre-Market Approval standards

2  . . . . appears to constitute [a permissible] parallel claim . .

3  . nowhere does plaintiff's complaint provide any factual detail to

4  substantiate that crucial allegation." <u>See also</u> <u>Parker v. Stryker</u>

5  <u>Corp.</u>, 584 F. Supp. 2d 1298, 1302 (D. Colo. 2008) (allegation that

6  defendant violated the PMA manufacturing process insufficient;

7  plaintiff must allege facts identifying the alleged violation),

8  <u>Heisner ex rel. Heisner v. Genzyme Corp.</u>, 2008 WL 2940811, 5 (N.D.

9  Ill. 2008) (dismissing complaint that did not allege whether

10 "defect" was or was not in violation of federal requirements).

11      The court need not decide between these approaches for

12 purposes of this motion. As explained above, plaintiffs' second,

13 third, and fourth claims fail under either approach. Plaintiffs'

14 first claim, on the other hand, meets the stricter of these two

15 requirements.

16                         **IV. CONCLUSION**

17      For the reasons stated above, defendant's motion to dismiss,

18 Doc. No. 15, is GRANTED IN PART. Defendant's motion is DENIED as

19 to plaintiffs' first claim. Plaintiffs' second, third, and fourth

20 claims are DISMISSED WITHOUT PREJUDICE.

21      IT IS SO ORDERED.

22      DATED:  July 8, 2009.

23

24

25                         LAWRENCE K. KARLTON
                           SENIOR JUDGE
26                         UNITED STATES DISTRICT COURT